UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

THOMAS GRANDE GRAJEDA,

    Plaintiff,

v.

ROBERT A. HOREL, Warden; MICHAEL SAYRE, M.D.; SUE RISENHOOVER, F.N.P.; JOHN KRAVITZ, CCII (A); MAUREEN McLEAN, F.N.P.; J. FLOWERS, R.N.; and LINDA ROWE, M.D.,

    Defendants.

                                       /

No. C 07-4752 PJH (PR)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND STAYING CASE**

This is a civil rights case filed pro se by a state prisoner. The only remaining defendants, Sayre, Risenhoover, and Rowe ("defendants") have moved for summary judgment and plaintiff has opposed the motion. The motion is ready for decision. For the reasons set out below, this court **GRANTS** Sayre's and Risenhoover's motions for summary judgment and **DENIES** Rowe's motion for summary judgment.

## BACKGROUND

While incarcerated in Corcoran State Prison, plaintiff was involved in a vehicle accident. Compl. ¶ 13. Plaintiff suffered serious injuries to his face, forehead, right knee, and right hip. *Id.* He received medical treatment for his injuries, including reconstructive surgery for his face and forehead and arthroscopic surgery for his right knee, but he did not undergo surgery or receive treatment for his fractured hip. *Id.* at ¶¶ 13-14.

Plaintiff was transferred to Pelican Bay State Prison in June of 2004. *Id.* at ¶ 15. Plaintiff's claims involve only the care that he received after he arrived at Pelican Bay State Prison. *See id.* at ¶¶ 15-47. In his First Amended Complaint, which is the operative

complaint here, plaintiff contends that Sayre and Risenhoover willfully and maliciously deprived him of his cane and leg brace, despite knowing of his injuries; that Sayre refused to examine him, retaliated against him for filing grievances, and failed to obtain his medical records; that defendant McLean, although informed of his ongoing medical needs by way of his grievances, failed to provide medical care; that Rowe was deliberately indifferent to a serious medical need by not treating his anemia for fourteen months; and that defendant Horel, the warden, was deliberately indifferent to his serious medical needs by not requiring medical staff to provide proper care. *Id.* at ¶ ¶ 53-59, 62-63; *see also* Order Granting Defs.' Mot. to Dismiss at 3. Plaintiff also asserted negligence and state law medical malpractice claims against Sayre and Risenhoover. Compl. at ¶ ¶ 60-67; *see also* Order Granting Defs.' Mot. to Dismiss at 3-4.

This court ordered service upon defendants McLean, Sayre, Rowe, Horel, and Risenhoover. Ord. of Service (Feb. 5, 2008) at 3. The claims against defendants Kravitz and Flowers were dismissed with prejudice. *Id.*

Defendants McLean, Sayre, Horel, Rowe, and Risenhoover filed a motion to dismiss for failure to exhaust administrative remedies and for failure to state a claim. Defs.' Mot. to Dismiss, 12-21. This court granted the motion in part, leaving the deliberate indifference claim against Rowe for failing to treat plaintiff's anemia for fourteen months; the deliberate indifference claims against Sayre and Risenhoover for discontinuing plaintiff's permission for a cane and knee brace; and the state law claims against Sayre and Risenhoover. Order Granting Defs.' Mot. to Dismiss at 10. The ruling on the motion to dismiss eliminated McLean from the case, and plaintiff subsequently elected to abandon his claims against Horel. The movants here, therefore, are the only remaining defendants.

## DISCUSSION

### I.     Legal Standard for Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may

2

affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. Where the moving party has met its burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

## II.  Eighth Amendment Medical Care Claims

Plaintiff asserts that Rowe failed to treat his anemia for fourteen months and that this was deliberate indifference to a serious medical need. Compl. ¶ 57. Plaintiff also claims that Risenhoover and Sayre were deliberately indifferent because they willfully and maliciously deprived plaintiff of his cane and leg brace, despite knowing of his injuries. *Id.* at ¶ 55.

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*; *WMX Tech., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin*, 974 F.2d at 1059.

3

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). The following are examples of indications that a prisoner has a "serious" need for medical treatment: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

A prison official is deliberately indifferent if the official knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but the official "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

**A.   Rowe**

   **1.   Deliberate Indifference**

As to the first prong of the "deliberate indifference" test, there is no genuine issue of material fact as to the seriousness of plaintiff's medical need; anemia is an "'injury' that a reasonable doctor or patient would find important and worthy of comment or treatment," *McGuckin*, 974 F.2d at 1059, and the parties do not dispute the fact that plaintiff had a serious medical need for the treatment of his mild anemia. Rowe contends, however, that she was not deliberately indifferent to that need.

Rowe is a contract doctor at Pelican Bay State Prison. Decl. Rowe ¶ 1. In her declaration, she states that she first began treating plaintiff on October 20, 2005. *Id.* at ¶ 3. Between October 20, 2005, and January 20, 2006, Rowe examined plaintiff three times for his complaints of headaches, back pain, and right leg pain. *Id.* at ¶ ¶ 3-14. Since January

4

of 2006, Rowe has not treated plaintiff other than by refilling plaintiff's prescription on April 24, 2006. *Id.* at ¶ 15. She does not contend that she treated his anemia, nor does she say whether she was or was not aware of it. *Id.* at ¶ ¶ 1-17.

Given this record and the standard for medical claims such as plaintiff's, discussed above, the question is whether there is a genuine issue of fact whether Rowe knew of plaintiff's anemia in the period when she was caring for him.

In his opposition, plaintiff contends that Rowe treated him on March 22, 2005, and informed him that he was anemic. Pl.'s Decl. ¶ ¶ 4-5. Plaintiff further contends that Rowe did not prescribe medication for his anemia and that she refused to provide him with vitamins during that visit. *Id.* Plaintiff asserts that Rowe was aware of his medical condition and yet failed to provide treatment for his anemia between March 22, 2005 and June 6, 2006. *Id.* at ¶ 7. However, plaintiff is wrong that it was Rowe who diagnosed his anemia. Contrary to plaintiff's assertion, the medical records show that it was Dr. David, who is not named as a defendant in this action, who treated plaintiff on March 22, 2005. Decl. Pl., Ex. B at 29; that Dr. David, not Rowe, conducted blood tests for plaintiff on February 15, 2005 and March 18, 2005; and that it was Dr. David who concluded that plaintiff had mild anemia, *id.* Ex. A at 24-26; *Id.* Ex. B at 29, 31. Plaintiff's contentions thus are inadequate to generate a genuine issue of fact whether Rowe was aware of his anemia as early as March 2005. *See Scott v. Harris*, 550 U.S. 372, 380-83 (2007) ("[w]hen opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Furthermore, plaintiff's contention that between March 22, 2005 and June 6, 2006, "[he] was never given any medical treatment or given any kind of medication for [his] anemia," and that "defendant Rowe was aware of [his] medical condition and anemia" during that time period, *id.* at ¶ 7, is conclusory and thus insufficient to generate a genuine issue of fact. S*ee Liberty Lobby*, 477 U.S. at 249-50 (stating that if the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary

5

judgment may be granted); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) (in equal protection case, conclusory statement of bias not sufficient to carry nomoving party's burden).

There is, however, other evidence that Rowe knew of the anemia at some point during the relevant period: In her declaration, Rowe says that when she saw plaintiff on October 20, 2005, plaintiff told her that he was positive for Hepatitis C. Decl. Rowe at ¶ 4; Decl. Kenny, Ex. A, AGO-0001-0002. When she informed him that the blood test conducted in March, 2005, was negative for Hepatitis C, plaintiff became angry and walked out. *Id.* It was the report on the March 2005 blood test that concluded that plaintiff was mildly anemic. Pl.'s Decl., Ex. B at 29, 31. This is evidence that Rowe had seen the blood test, and thus is evidence suggesting that she knew of the anemia. It is sufficient to generate a genuine issue of fact whether she was aware of plaintiff's serious medical need for treatment of his anemia, and as it is undisputed that she did not treat his anemia, thus is sufficient to defeat Rowe's claim that she is entitled to summary judgment because she was not deliberately indifferent.

### 2. Qualified Immunity

Rowe also contends that she is entitled to qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Claims of qualified immunity require a two-step analysis. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (overruling the sequence of the two-prong test that required determination of a deprivation first and then whether such right was clearly established, as required by *Saucier v. Katz*, 533 U.S. 194 (2001)). First, the court considers whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury," show that the defendant's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If the allegations do not establish the violation of a constitutional right, "there is no necessity for further inquiries concerning qualified immunity." *Id.*

Second, if the allegations could make out a constitutional violation, the court then asks whether the right was clearly established. *Id.* at 202. That is, the court must determine whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

Here, it is undisputed that plaintiff had a serious medical need, and there is no evidence in the record that Rowe, despite seeing plaintiff at least three times, ever gave him any care for his anemia. It would have been clear to a reasonable officer in Rowe's position that it was unlawful to fail to treat a serious medical need of which she was aware. She is not entitled to qualified immunity.

### B.    Defendants Risenhoover and Sayre

Even though plaintiff asserts a deliberate indifference claim against Risenhoover and Sayre specifically for confiscating his cane and knee brace, his underlying serious medical need is treatment for the lower back, right hip and right knee injuries that he sustained in his accident. Accordingly, this court must determine whether there is a genuine issue of material fact as to whether defendants knew that plaintiff faced a substantial risk of harm from his injuries and disregarded that risk by failing to take reasonable steps to abate it. *See Farmer*, 511 U.S. at 837. Defendants contend that they were not deliberately indifferent to plaintiff's serious medical need and this court agrees.

Risenhoover is a Certified Family Nurse Practitioner at Pelican State Prison. Decl. Risenhoover, ¶ 1. In her declaration, Risenhoover says that on May 1, 2006, she examined plaintiff and renewed his permission for a neoprene sleeve for his right knee. *Id.* at ¶ ¶ 6-7. A neoprene sleeve "gently compresses the area around the knee and improves neuromuscular control." *Id.* at ¶ 7. On May 5, 2006, Risenhoover informed plaintiff not only that Pelican Bay employees had observed him on two occasions walking smoothly without a cane or a knee brace, and without favoring his left or right side, but also that the Medial Advisory Review ("MAR") Committee determined that plaintiff did not need a cane or a

1  knee brace.[1] *Id.* at ¶ 11.  She also requested a non-metallic right knee sleeve for plaintiff.
2  *Id.*  There is no evidence as to when plaintiff's cane was confiscated or by whom, but it is
3  clear that his cane was taken at some point..

4  On June 6, 2006, Risenhoover reviewed the x-rays, doctors Duncan and
5  Maukonen's analyses of plaintiff's right leg and lower back, and the physical therapist's
6  notes; ordered ordered Myoflex to address his complaints of pain; advised him to avoid
7  strenuously exercising his back and right knee and to increase stretches and warm-ups
8  before exercising; and requested that he receive physical therapy sessions and a non-
9  metallic knee sleeve to strengthen his knee.  *Id.* at ¶ 14.  According to her declaration,
10 Risenhoover examined plaintiff an additional nineteen times in connection with his lower
11 back, right hip and right knee injuries between June 6, 2006 and October 17, 2007.  *Id.* at ¶
12 ¶ 17, 18, 21-24, 26-34, 36-38, 40.  During the visits, Risenhoover ordered Tylenol,
13 Naprosyn, Salsalate, and other non-steroidal anti-inflammatory drugs ("NSAIDs") to
14 address his complaints of pain, advised plaintiff to avoid strenuous exercise, ordered x-rays
15 of plaintiff's right knee and right hip, examined plaintiff as a follow-up to his x-rays and
16 physical therapy sessions, referred plaintiff to an orthopedic specialist, and referred his
17 requests to the MAR committee.  *See id.*

18 Sayre has worked as the Chief Physician/Surgeon at the Pelican Bay State Prison
19 since January 2005.  Decl. Sayre at ¶ 1.  In his declaration, Sayre explains that in May
20 2006, the MAR committee revoked plaintiff's permission to have a cane and knee brace
21 because they were not medically indicated.  *Id.* at ¶ 16.  Between May 2006 to August
22 2006, plaintiff attended physical therapy sessions, received a non-metallic right knee
23 sleeve, and was prescribed Myoflex, a topical pain relieve that works by reducing swelling
24 and inflammation in muscle and joints.  *Id.* at ¶ 18.  Based on x-rays taken of plaintiff's hip
25 in October 2006, Sayre determined that there was no major change in plaintiff's condition

---

[1] Although Risenhoover's declaration states that the MAR committee "determined that [plaintiff] *did need* a cane or a knee brace," *see* Decl. Risenhoover at ¶ 11 (emphasis added), the record suggests that this was a typographical error and indicates that the MAR committee revoked plaintiff's permission to use a cane and knee brace because they were *not* medically indicated, *see* Decl. Kenny, Ex. A at AGO-0053; Decl. Sayre, ¶ 16 .

8

over the past two years that would cause an increase in pain, and declared that plaintiff's his medical providers did not need to change the treatment plan. *Id.* at ¶ 20. Sayre reviewed plaintiff's case based on his complaints of right knee pain and right hip pain and recommended that he attend physical therapy sessions. *Id.* at ¶ 21. Physical therapy sessions teach pain-decreasing exercises and how to avoid activities that increase pain and wear and tear on the affected area. *Id.*; Decl. Kenny, Ex. A at AGO-0172-0175. Another x-ray of plaintiff's knee taken in March 2007 showed that there was no obvious soft tissue swelling, calcification, or any other changes since the August 2005 x-ray. Decl. Sayre at ¶ 22.

In September 2007, Sayre reviewed plaintiff's case and recommended a referral to Duncan, an orthopedic specialist. *Id.* at ¶ 23. Duncan examined plaintiff in October 2007, and determined that the arthritis in plaintiff's right hip had increased somewhat. *Id.* at ¶ 24. Duncan advised against surgery, but recommended that plaintiff use a cane and knee brace based on the arthritis. *Id.* Sayre approved a cane and knee brace based on Duncan's recommendation. *Id.* at 26. Sayre also placed plaintiff in a Pelican Bay disability program, the purpose of which is to provide inmates with appropriate housing and program opportunities without regard to disability. *Id.* In his declaration, Sayre states that plaintiff's condition was monitored and treated at all times; plaintiff received various studies and examinations, including CT scans, MRI studies, and nerve conduction studies. *Id.*

Plaintiff cannot prevent entry of summary judgment unless he can show a genuine issue of fact as to deliberate indifference. In his declaration, plaintiff states between June 2007 and October 2007, he was allowed to suffer with severe pain and discomfort from having to walk without his cane and knee brace and that his right hip has gotten worse. Decl. Plaintiff at ¶ 20. On June 6, 2006, Risenhoover informed him that Sayre ordered her to confiscate his cane and knee brace because it was reported by medical staff that he was seen walking without his cane and knee brace. *Id.* at ¶ 14. Plaintiff says that he informed Risenhoover that he had an identical twin brother who lived in the same housing unit and that it was probably him seen walking without the cane and knee brace. *Id.* According to

plaintiff, Risenhoover said that she did not believe that he had an identical twin brother and that she would check into it. *Id.* He contends that when he saw Risenhoover on July 28, 2006, she informed him that "he was not going to get [his] cane and knee brace back period because [he] did not need them" and that "as long as [he] was in the 'short corridor' (S.H.U.) that [he] would not receive the proper medical treatment that [he] was seeking because the S.H.U. is for trouble makers and gang members." *Id.* at ¶ 15. Plaintiff alleges that he was not given any physical examination, MRI, or x-ray before defendants confiscated his cane and knee brace. *Id.* at ¶ 16.

In June of 2007, Sayre placed plaintiff in the disability program. *Id.* at ¶ 22. Duncan examined plaintiff on October 17, 2007 and "was not happy" that Sayre ordered Risenhoover to confiscate plaintiff's cane and knee brace. *Id.* at ¶ 21. Duncan informed plaintiff that he would need a cane and knee brace for the rest of his life. *Id.* On November 2, 2007, plaintiff was given back his cane. *Id.* at ¶ 23.

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). A showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1059-60 (9th Cir. 2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must produce evidence tending to show that the course of treatment chosen was medically unacceptable under the circumstances and that the defendants chose this course "in conscious disregard of an excessive risk to plaintiff's health." *Toguchi*, 391 F.3d at 1058; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Farmer*, 511 U.S. at 837).

Here, plaintiff makes no such showing. There is no evidence in the record that the treatment chosen was medically unacceptable or that Risenhoover and Sayre chose that course of treatment for any reason other than their medical judgment that it was a proper

10

course of treatment. Nor is there any evidence that defendants denied, delayed or interfered with plaintiff's treatment in conscious disregard of an excessive risk to his health. *See Farmer,* 511 U.S. at 837. Among other things, Risenhoover and Sayre prescribed NSAIDs to address plaintiff's complaints of pain, ordered x-rays of his right knee and right hip, sent him to physical therapy sessions, referred him to an orthopedic specialist, and placed plaintiff in a disability program to address his serious medical need. Furthermore, in Sayre's and Risenhoover's medical judgment, there was nothing in plaintiff's record to indicate that they should alter plaintiff's treatment plan. Decl. Risehnoover at ¶ 29 (citing Decl. Kenny, Ex. A at AGO-0177-0180); Decl. Sayre at ¶ 20. Moreover, there is evidence that even though the inmate appeal response reflects that the MAR committee discontinued plaintiff's permission to have a knee sleeve, the knee sleeve was never confiscated. Decl. Risenhoover at ¶ 11, fn.1; *see also* Decl. Kenny, Ex. A at AGO-0060 (showing that on June 6, 2006, plaintiff stated that he "still ha[d] the knee brace in [his] cell because it [wa]s [his]"). The numerous physical examinations, referrals to specialists, diagnostic tests, physical therapy sessions, and treatments for pain establish defendants' concern for plaintiff's lower back, right hip and right knee injuries. Accordingly, Risenhoover and Sayre were not deliberately indifferent to plaintiff's medical need and are entitled to judgment as a matter of law. Because the motion will be granted for the above reasons, the court need not reach their qualified immunity claim.

**III.   State Law Claim**

In his amended complaint, plaintiff asserts a supplemental state law medical malpractice claim against Sayre and Risenhoover. Because the court has disposed of the federal claims against defendants Sayre and Risenhoover, it declines to exercise supplemental jurisdiction over plaintiff's state law claim. *See* 28 U.S.C. § 1367(c)(3).

**CONCLUSION**

1. The motion for summary judgment filed by Rowe, Sayre, and Risenhoover (document number 32 on the docket) is **GRANTED** as to Sayre and Risenhoover and **DENIED** as to Rowe. Plaintiff's state law claims against Sayre and Risenhoover are

**DISMISSED** without prejudice.

2. The court has established a Pro Se Prisoner Mediation Program in which certain prisoner civil rights cases are referred to a neutral magistrate judge for mediation. This case is referred to Magistrate Judge Nandor Vadas for possible settlement pursuant to the Pro Se Prisoner Mediation Program. Magistrate Judge Vadas shall conduct mediation proceedings as he deems appropriate and file a report thereafter.

In view of the referral, further proceedings in this case are **STAYED** until such time as Judge Vadas reports that the case has been settled or cannot be settled. If the case is not settled, the court will enter a new scheduling order. The clerk shall mail a copy of the file, including this order, to Magistrate Judge Vadas in Eureka, California.

**IT IS SO ORDERED.**

Dated: March 30, 2010.

PHYLLIS J. HAMILTON
United States District Judge

P:\PRO-SE\PJH\CR.07\GRAJEDA4752.MSJ-partial.wpd